PEARSON, J.

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| CHARLES LEONARD GALLOWAY, | ) | |
| | ) | CASE NO. 4:17-CV-1314 |
| Plaintiff, | ) | (4:16-CV-572) |
| | ) | |
| v. | ) | JUDGE BENITA Y. PEARSON |
| | ) | |
| FEDERAL TORT CLAIMS ACT, *et al*., | ) | |
| | ) | **MEMORANDUM OF OPINION AND** |
| Defendants. | ) | **ORDER** [Resolving ECF Nos. 62, 80] |

Pending before the Court are Plaintiff Charles Leonard Galloway's motion for summary judgment (ECF No. 62, supplemented at ECF No. 78) and Defendant the United States of America's[1] (the "United States" or the "Government") motion to dismiss and for summary judgment (ECF No. 80). The Government filed a response in opposition (ECF No. 82) to Plaintiff's motion for summary judgment, and Plaintiff did not file a reply. Plaintiff also did not file a response in opposition to the Government's motion. Insofar as Plaintiff's other filings reflect an argument in opposition to dismissal or summary judgment, however, the Court liberally construes the content of those filings. Plaintiff has submitted no evidence in support of his motion, nor in opposition to the Government's motion.

---

[1] Plaintiff's only remaining claims arise under the Federal Tort Claims Act. The United States is the only remaining named Defendant. ECF No. 49; *Minutes of Proceedings* (Feb. 22, 2019).

(4:17CV1314)

For the reasons stated herein, summary judgment is granted in favor of the United States as to both remaining claims. Any claim of negligence or medical malpractice arising from Plaintiff's June 2014 seizure is dismissed.

## I. Background

Plaintiff advances two distinct claims against the United States, both arising under the Federal Tort Claims Act ("FTCA").[2] The first sounds in medical malpractice, and the second sounds in ordinary negligence.

Plaintiff has been in federal custody since 2011 and is scheduled to be released in 2028. ECF No. 80-2 at PageID#: 350; *see* BOP Inmate Locator, https://www.bop.gov/mobile/find_inmate/. He arrived at the Federal Correctional Institution in Elkton, Ohio ("FCI Elkton"), in 2012, and he was transferred to FCI Schuylkill in Pennsylvania in November 2018. ECF No. 80-2 at PageID#: 363, 366.

In September 2013, while housed at FCI Elkton, Plaintiff presented to sick call complaining that his "tongue didn't work." Case No. 4:16-CV-572-BYP (N.D. Ohio, filed Mar. 9, 2016), ECF No. 1 at PageID#: 4; Case No. 4:17-CV-1314-BYP (N.D. Ohio, filed Jun3 22, 2017), ECF No. 62-2 at PageID#: 262. He was turned away, however, when the physician insisted Plaintiff was "faking it." Case No. 4:16-CV-572, ECF No. 1 at PageID#: 4; Case No. 4:17-CV-1314, ECF No. 62-2 at PageID#: 262. The nurse, perceiving that Plaintiff was

---

[2] Plaintiff's claims were initially presented in separate actions. *See* Case No. 4:16-CV-572-BYP (N.D. Ohio filed Mar. 9, 2016); Case No. 4:17-CV-1314-BYP (N.D. Ohio June 22, 2017). The two actions were consolidated. ECF No. 49 (latter docket).

2

(4:17CV1314)

behaving in a threatening manner, called an emergency, and Plaintiff was placed in the Special Housing Unit for several days. Case No. 4:16-CV-572, ECF No. 1 at PageID#: 4; Case No. 4:17-CV-1314, ECF No. 62-2 at PageID#: 262. While there, on September 18, 2013, he suffered a stroke. *Id.* at PageID#: 367. Plaintiff was transported in an ambulance to an outside medical facility and eventually to St. Elizabeth's Hospital in Youngstown, Ohio, where an evaluation revealed that surgery was not necessary. Case No. 4:16-CV-572, ECF No. 1 at PageID#: 4; Case No. 4:17-CV-1314, ECF No. 78 at PageID#: 323; ECF No. 80-4 at PageID#: 504. He was later transported to another facility for rehabilitation. ECF No. 80-4 at PageID#: 504.

Over the course of the following years, Plaintiff was treated for complications resulting from his stroke, including "residual seizure disorder[,] aphasia[,] abnormal gait[,] and movement disorder."[3] *See* ECF No. 80-3 at PageID#: 470-503; ECF No. 80-2 at PageID#: 391-404. Specifically, he was prescribed a twice-daily dosage of anti-seizure medicine ("Keppra") and was counseled that his safety, including adherence to that prescription, was "paramount." *See* ECF No. 80-3 at PageID#: 475; ECF No. 80-2 at PageID#: 398 ("two times a day"). Despite those complications, Plaintiff's "comprehension . . . remains intact," ECF No. 80-2 at PageID#: 467, and he routinely presents as "alert and oriented," ECF No. 80-3 at PageID#: 473, 477, 498, 500. Plaintiff acknowledges that he falls down often. ECF No. 80-2 at PageID#: 366-68.

On June 6, 2014, Plaintiff suffered a seizure. Although Plaintiff suggests he "couldn't have missed [a dose]" of his anti-seizure medication, medical records reflect that his seizure

---

[3] Plaintiff also suffers from diabetes, hypertension, chronic hepatitis B, and renal insufficiency. ECF No. 80-2 at PageID#: 418; ECF No. 80-3 at PageID#: 481.

3

(4:17CV1314)

occurred because Plaintiff "[m]issed 10 doses of Keppra." ECF No. 80-3 at PageID#: 472. Plaintiff was immediately sent to St. Elizabeth's Hospital to be checked, *id.*, and he reports no complications or injuries arising from the June 2014 seizure.

On November 3, 2016, while walking through the dish line at the chow hall, Plaintiff slipped and fell on a wet floor. Case No. 4:17-CV-1314, ECF No. 1 at PageID#: 3; *see* ECF No. 80-3 at PageID#: 496-501. He says an inmate who worked as a dishwasher was spraying water indiscriminately on the counter and on the floor. ECF No. 80-2 at PageID#: 363-64, 383-84. Plaintiff does not know whether wet floor signs were placed in the chow hall at the time, *id.* at PageID#: 388, but he acknowledges that the chow hall was well lighted and that he was familiar with the area around the dish line. *Id.* at PageID#: 378-79, 363-64.

Plaintiff was taken immediately to Health Services, and from there he was transported to a local hospital for a precautionary CT scan. *Id.* at PageID#: 386-88; *see* ECF No. 80-5 at PageID#: 531. The CT scan was returned negative for any brain injuries. ECF No. 80-2 at PageID#: 386-88; *see* ECF No. 80-5 at PageID#: 531. Back at FCI Elkton, Plaintiff was examined, given acetaminophin ("Tylenol") for pain, and sent on his way. *See* ECF No. 80-2 at PageID#: 421-30; ECF No. 80-3 at PageID#: 495-501. Several follow-up visits revealed some pain in his back but no lasting injuries. ECF No. 80-3 at PageID#: 490-95.

## II. Legal Standard

Summary judgment is appropriately granted when the pleadings, the discovery and disclosure materials on file, and any affidavits show "that there is no genuine dispute as to any

4

(4:17CV1314)

material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); see also Johnson v. Karnes, 398 F. 3d 868, 873 (6th Cir. 2005). The moving party is not required to file affidavits or other similar materials negating a claim on which its opponent bears the burden of proof, so long as the movant relies upon the absence of the essential element in the pleadings, depositions, answers to interrogatories, and admissions on file. Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). The moving party must "show that the non-moving party has failed to establish an essential element of his case upon which he would bear the ultimate burden of proof at trial." Guarino v. Brookfield Twp. Trustees, 980 F. 2d 399, 403 (6th Cir. 1992).

Once the movant makes a properly supported motion, the burden shifts to the non-moving party to demonstrate the existence of a genuine dispute. An opposing party may not simply rely on its pleadings; rather, it must "produce evidence that results in a conflict of material fact to be resolved by a jury." Cox. v. Ky. Dep't of Transp., 53 F.3d 146, 150 (6th Cir. 1995). To defeat the motion, the non-moving party must "show that there is doubt as to the material facts and that the record, taken as a whole, does not lead to a judgment for the movant." Guarino, 980 F.2d at 403. In reviewing a motion for summary judgment, the Court views the evidence in the light most favorable to the non-moving party when deciding whether a genuine issue of material fact exists. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587-88 (1986); Aickes v. S.H. Kress & Co., 398 U.S. 144 (1970).

"The mere existence of some factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment . . . ." Scott v. Harris, 550 U.S. 372, 380 (2007) (quoting Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-48 (1986). The fact

5

(4:17CV1314)

under dispute must be "material," and the dispute itself must be "genuine." A fact is "material" only if its resolution will affect the outcome of the lawsuit. *Scott*, 550 U.S. at 380. In determining whether a factual issue is "genuine," the Court assesses whether the evidence is such that a reasonable jury could find that the non-moving party is entitled to a verdict. *Id*. ("[Summary judgment] will not lie . . . if the evidence is such that a reasonable jury could return a verdict for the non-moving party.").

### III. Law and Analysis

#### A. Medical Malpractice: September 2013 Stroke

There is no genuine dispute that, when Plaintiff initially presented to sick call in September 2013 complaining that "[his] tongue didn't work," the doctor dismissed him and said, repeatedly, that Plaintiff was "faking it." Case No. 4:16-CV-572, ECF No. 1 at PageID#: 4; Case No. 4:17-CV-1314, ECF No. 62-2 at PageID#: 262. Plaintiff spent the next several days in the Special Housing Unit. At some point during his placement there, he began to vomit, and he was transported in an ambulance to an outside medical facility, and eventually to St. Elizabeth's Hospital. ECF No. 78 at PageID#: 323; ECF No. 80-4 at PageID#: 503-04.

Plaintiff had suffered a stroke; specifically, an intracerebral hemmorhage, for which a medical evaluation indicated no surgery was required. ECF No. 80-4 at PageID#: 504. A subsequent CT head scan showed "evidence of dead (irretrievably lost) brain tissue . . . at the time of presentation" at the hospital. *Id.* Plaintiff implies, but does not expressly argue, that earlier intervention by medical staff at FCI Elkton would have mitigated the resulting damage to

6

(4:17CV1314)

his brain, and that ignoring Plaintiff's early symptoms at his initial presentation to sick call amounted to medical malpractice.

Under Ohio law, a medical malpractice claim must satisfy four elements: The plaintiff must show "(1) the existence of a duty owed to the plaintiff by the defendant, (2) a breach of the defendant's duty, (3) causation based on probability, and (4) damages." *Loudin v. Radiology & Imaging Servs., Inc.*, 924 N.E.2d 433, 454 (Ohio Ct. App. 2009) (citing *Stinson v. England*, 633 N.E.2d 532, 537 (Ohio 1994)).

The Government's expert explained that "[a] stroke (sometimes referred to as an infarction) ultimately leads to the death of the affected brain tissue. Once infarction has occurred, the loss of tissue is irreversible." *Id.* The expert further opined, "[b]ased on the CT scans and location of the hemorrhage, no intervention would have reversed the damage to [Plaintiff's] language center. This means that upon the hemorrhage, Mr. Galloway was forever left with a language deficit." *Id.* If that expert opinion is credited, then Plaintiff's medical malpractice claim cannot survive as a matter of law. Whether or not FCI Elkton's medical staff breached its duty of care to Plaintiff, the Government's expert's opinion (ECF No. 80-4) breaks the chain of actual and proximate causation between the physician's breach and Plaintiff's injury. Plaintiff marshals no evidence from any witness, lay or expert, to restore that broken link. Plaintiff "has failed to establish an essential element of his case upon which he would bear the ultimate burden of proof at trial." *Guarino*, 980 F. 2d at 403.

The Government also points out that Plaintiff's medical malpractice claim is barred by the statute of limitations. ECF No. 80-1 at PageID#: 342. Plaintiff was obligated to file his tort

7

(4:17CV1314)

claim no later than two years from the date the action accrued. 28 U.S.C. § 2401(b); *United States v. Kubrick*, 444 U.S. 111, 122 (1979). He filed his action for medical malpractice on March 9, 2016, about two years and six months after his cause of action first became available. Case No. 4:16-CV-572, ECF No. 1. Plaintiff submits neither evidence nor argument to suggest that the period of limitations should have been tolled or that his cause of action accrued later than it seems.

There is no genuine dispute of material fact as to the actual and proximate cause of Plaintiff's injuries or with respect to the statute of limitations, and the United States is entitled to judgment as a matter of law on each ground independently. The Government's motion for summary judgment (ECF No. 80) is granted,[4] and Plaintiff's motion for summary judgment (ECF Nos. 62, 78) is denied.

### B. Medical Malpractice: June 2014 Seizure

Plaintiff's pleading does not suggest any discontentment with his medical treatment well after his 2013 stroke. Case No. 4:16-CV-572, ECF No. 1 at PageID#: 4-5. The first written indication that Plaintiff wished to press such a claim appeared in his supplement to his motion for summary judgment, in which he explained that his June 2014 seizure was the result of negligence or malpractice by the FCI Elkton medical staff. *See* ECF No. 78 at PageID#: 324.

---

[4] The Government also argues that Plaintiff's failure to submit an expert affidavit of merit requires dismissal of his medical malpractice claim. ECF No. 80 at PageID#: 339-42. Because the Court concludes that there is no genuine dispute of material fact and the Government is entitled to judgment as a matter of law, it is unnecessary to address the Government's motion to dismiss.

8

(4:17CV1314)

Because the allegation does not appear in Plaintiff's pleading (either as originally filed or as amended), Plaintiff cannot succeed on such an allegation, and the United States is entitled to judgment as a matter of law.

Even if the allegation were well pleaded, however, there would be no genuine dispute of material fact, and the United States would be entitled to judgment as a matter of law. Contemporaneous medical records reveal that, leading up to his seizure, Plaintiff had "[m]issed 10 doses of Keppra," his prescribed anti-seizure medication. ECF No. 80-3 at PageID#: 472. They also reveal Plaintiff's own report to medical staff that he "forgot to take [his] seizure medicine." *Id.* at PageID#: 477. Plaintiff's own pleading reports that he occasionally "can't remember . . . to take [his] pills." Case No. 4:16-CV-572, ECF No. 1 at PageID#: 5. Plaintiff confirmed that, after his seizure, he was placed back on the daily pill line because he had been delinquent prior to the seizure. ECF No. 80-2 at PageID#: 421; *see* ECF No. 80-3 at PageID#: 472 ("Pill line for keppra was initiated upon return [from the hospital]."). The Government's expert reports Plaintiff's "notes indicate no evidence of seizure while Mr. Galloway is taking his [medication]." ECF No. 80-4 at PageID#: 505. Plaintiff's generalized suggestion in his deposition that he "couldn't have missed" a single dose, ECF No. 80-2 at PageID#: 394, is nonspecific and contradicted by medical records, Plaintiff's own, more specific testimony, and his pleading. Again, Plaintiff cannot establish that any injury he sustained occurred as a result of bad medical treatment.

(4:17CV1314)

Additionally, Plaintiff makes no suggestion that he suffered any lasting injury beyond the seizure itself. *See* ECF No. 80-3 at PageID#: 472 (reporting no pain and no complications on June 10, 2014, four days after the seizure).

Any claim pertaining to Plaintiff's June 2014 seizure is dismissed because it is not well pleaded. Even if it were well pleaded, summary judgment would be granted with respect to such a claim because Plaintiff raises no genuine dispute of material fact and the United States is entitled to judgment as a matter of law.

**C. Negligence: November 2016 Slip and Fall**

Plaintiff alleges that his November 2016 slip and fall in the chow hall was the result of negligence by FCI Elkton's staff. Case No. 17-CV-1314, ECF No. 1 at PageID#: 3. The Government puts Plaintiff to his proof in its motion for summary judgment, and Plaintiff advances no evidence to support his claim.

"To prevail on a claim for negligence the plaintiff must prove the following elements: (1) the existence of a duty owed by the defendant to the plaintiff, (2) the breach of duty, (3) causation, and (4) damages." *Erie Ins. Co. v. Cortright*, 2003 WL 22931380, at *1, ¶ 12 (Ohio Ct. App. Dec. 12, 2003) (citing *Menifee v. Ohio Welding Prods., Inc.*, 472 N.E.2d 707 (Ohio 1984)).

First, Plaintiff suffered no compensable injury and sustained no damages. He did not lose consciousness when he fell. ECF No. 80-2 at PageID#: 422; ECF No. 80-3 at PageID#: 496-97. On the same day he fell, medical records reflect that he was "alert and oriented," and he registered no complaints of pain. ECF No. 80-3 at PageID#: 498-99 ("Chief Complaint: No

10

(4:17CV1314)

Complaint(s) . . . Pain: No."). The day after the fall, he complained that his "whole back hurt[ ]," but the medical exam records indicate "[p]ain [was] noted only with twisting or bending." *Id.* at PageID#: 496-97. Plaintiff enjoyed a "full range of motion" in his neck and had no contusions there. *Id.* at PageID#: 497. A CT scan taken on the day of the fall was returned negative for any brain injury. ECF No. 80-2 at PageID#: 386-88; ECF No. 80-4 at PageID#: 504 (CT scan revealed no "evidence of any new fracture, stroke, [or] other pathology."). Plaintiff was given Tylenol and told to perform certain exercises. *See* ECF No. 80-4 at PageID#: 504; *see* ECF No. 80-2 at PageID#: 430, 435. Two weeks after the fall, on November 18, 2016, Plaintiff reported a minor ache (pain level 2 out of 10) in his lower back, and he was given 20 tablets of Tylenol. ECF No. 80-3 at PageID#: 494-95 ("No Significant Findings/No Apparent Distress"). Plaintiff visited the clinic again on December 29, 2016, for unrelated reasons, reporting no pain. *Id.* at PageID#: 490.

Additionally, Plaintiff makes no showing that FCI Elkton staff knew or reasonably should have known that the floor in the dish line was wet and, thus, hazardous. It is Plaintiff's burden to show that the staff "was . . . aware of the condition of the floor where [the] plaintiff fell." *Williams v. Ohio Dep't of Rehab. & Corrs.*, 583 N.E.2d 1129, 1132 (Ohio Ct. Cl. 1991) (citing *Presley v. Norwood*, 303 N.E.2d 81 (Ohio 1973)). In this case, according to Plaintiff, it was an inmate, not an officer, who sprayed the floor with water, ECF No. 80-2 at PageID#: 383-85, and Plaintiff makes no indication that any staff was standing nearby. In his deposition, Plaintiff explained that a person washing trays ordinarily sprays only the area where the trays are placed, but on this unusual occasion, the individual washing dishes sprayed water indiscriminately on the

11

(4:17CV1314)

counter and the floor.  *Id.* at PageID#: 363-64, 383-84.  Based on the evidence available, prison staff had no greater reason to be aware of the wet-floor hazard than Plaintiff himself.  A reasonable jury could not conclude that FCI Elkton staff breached its duty of reasonable care.

Indeed, Plaintiff fails to explain why he did not observe the hazard himself.  On his initial administrative remedy form, Plaintiff asserted there were no "wet floor" signs posted in the chow hall on the day he fell.  ECF No. 80-5 at PageID#: 529.  In its denial of his grievance, the Bureau of Prisons disagreed, positing: "[C]aution signs are posted daily during mainline in Food Service due to the potential of wet floors."  *Id.* at PageID#: 531.  In his deposition, Plaintiff retreated from his earlier position.  When asked whether any "wet floor" signs were posted on the day of his fall, Plaintiff stated he could not remember.  ECF No. 80-2 at PageID#: 388.  Plaintiff agreed that the chow hall was well lighted and that he was familiar with the area around the dish line.  *Id.* at PageID#: 378-79, 363-64.  Even if the floor was wet and consequently unsafe, Plaintiff fails to explain why he did not see the hazard himself and avert it.  *Cf. Armstrong v. Best Buy Co., Inc.*, 788 N.E.2d 1088, 1091 (Ohio 2003) ("Where a danger is open and obvious, a landowner owes no duty of care to individuals lawfully on the premises.").

Plaintiff's negligence claim lacks evidence that he was injured and that the United States breached its duty of care, and the United States is entitled to judgment as a matter of law.  Plaintiff's motion for summary judgment (ECF No. 62, supplemented at ECF No. 78) is therefore denied, and the Government's motion (ECF No. 80) is granted.

(4:17CV1314)

## IV. Conclusion

For the reasons given, Plaintiff's motion for summary judgment (ECF No. 62, supplemented at ECF No. 78) is denied, and the Government's motion for summary judgment (ECF No. 80) is granted in full. Any claim of medical malpractice arising from Plaintiff's June 2014 seizure is dismissed.

    IT IS SO ORDERED.

| | |
|---|---|
|    July 31, 2019 | */s/ Benita Y. Pearson* |
| Date | Benita Y. Pearson |
| | United States District Judge |